IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE:<br>HIDALGO COUNTY EMERGENCY<br>SERVICE FOUNDATION,<br>Debtor. | §<br>§<br>§<br>§ | CASE NO. 19-20497<br><br><br>CHAPTER 11 |
| HIDALGO COUNTY EMERGENCY<br>SERVICE FOUNDATION,<br>Plaintiff<br>v.<br>JOVITA CARRANZA, IN HER<br>CAPACITY AS ADMINISTRATOR FOR<br>THE U.S. SMALL BUSINESS<br>ADMINISTRATION,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADVERSARY NO. 20-______ |

**COMPLAINT AND VERIFIED EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Hidalgo County Emergency Service Foundation, the Debtor and Debtor-in-Possession in this Chapter 11 Proceeding ("**Debtor**", "**Plaintiff**", or "**Hidalgo County EMS**"), files this Complaint and Verified Emergency Application For Temporary Restraining Order And Preliminary Injunction against the Defendant Jovita Carranza in her capacity as Administrator for the United States Small Business Administration ("**SBA**" or "**Defendant**").

## I.
## JURISDICTION, VENUE, CONSTITUTIONAL AUTHORITY

1. This Court has jurisdiction over this complaint pursuant to 28 U.S.C. § 1334(b) as it arises under the Bankruptcy Code and arises in a case under the Bankruptcy Code.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

3. This is a core matter pursuant to 11 U.S.C. § 157(b)(2)(A), (D), and (O). In the event that any part of this action is determined to not be a core matter, the Plaintiff consents to

the Court's entry of a final judgment pursuant to 11 U.S.C. § 157(c). The Court therefore has Constitutional authority to enter a final judgment on all issues raised in this Complaint.

4. The statutory basis for the relief sought is 11 U.S.C. §§ 105(a) and 525(a), 28 U.S.C. § 2412, and Rule 7065 of the Federal Rules of Bankruptcy Procedure.

## II.
## PARTIES

5. The Plaintiff is the Debtor in this Chapter 11 case and remains in possession of its property and is operating its business as a debtor-in-possession, pursuant to section 1107 and 1108 of the Bankruptcy Code.

6. Defendant is Jovita Carranza in her capacity as administrator for the U.S. Small Business Administration, and can be served with process pursuant to FRBP 7004(b)(4) and (5) by U.S. First Class Mail as follows:

Jovita Carranza
U.S. Small Business Administration
409 3rd Street SW
Washington, DC 20416

Attn: Civil Process Clerk
Office of the U.S. Attorney, Southern District of Texas
1000 Louisiana, Ste. 2300
Houston, TX 77002

Attorney General
Attn: Civil Process
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Additionally, a copy of this complaint will be sent via e mail to the following:

Rick Kincheloe
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
1000 Louisiana Street, Suite 2300

Houston, Texas 77002
Phone: (713) 567-9422
Fax: (713) 718-3303
Richard.Kincheloe@usdoj.gov

Stephen D. Statham
Trial Attorney
Office of the United States Trustee
515 Rusk, Suite 3516
Houston, Texas 77002
(713) 718-4650 Ext. 232
Stephen.Statham@usdoj.gov

## III.
## OVERVIEW

7. Plaintiff seeks to have Defendant SBA enjoined from exceeding its statutory authority to administer the Paycheck Protection Program ("**PPP**"), a federal loan program that was authorized by Congress for small businesses in the wake of the global pandemic caused by COVID-19. The SBA made the approval of any PPP loan expressly contingent on the borrower not being "presently involved in any bankruptcy," even though this condition is nowhere to be found in the Coronavirus Aid, Relief, and Economic Security Act ("**CARES Act"**) that enacts the PPP, or in the Small Business Act.

8. Plaintiff therefore seeks an order requiring the SBA to remove all references to a PPP loan applicant's status as being involved in any bankruptcy from its PPP loan applications, PPP loan policies and procedures, and PPP loan agreements.

9. Plaintiff also seeks an order requiring SBA to instruct all lending institutions administering PPP loans that there is no exclusion from the PPP loan program on account of involvement in bankruptcy.

10. In addition Plaintiff seeks the same injunctive relief and a declaration that the SBA's insertion of a bankruptcy-related exclusion to eligibility for a PPP loan is unlawful discrimination under 11 U.S.C. §525(a).

11. Plaintiff also seeks an award of its costs and attorneys' fees against the United States generally or against the SBA specifically pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

**IV.**
**FACTS**

12. Hidalgo County EMS was established in 2007 with two ambulances and thereafter grew rapidly and is now the largest ambulance company in South Texas with operations in areas that are some of the poorest in the country.

13. Hidalgo County EMS currently operates approximately 100 ambulances, including Mobile Intensive Care Units, wheel chair vans, supervisor units, as well as a communications bus used for disasters, and a special operations trailer equipped for mass casualty incidents.

14. Hidalgo County EMS is the primary 911 patient transfer provider for a large part of its service area.

15. Hidalgo County EMS also does business as South Texas AirMed and in that capacity operates two leased fixed wing Beechcraft King Air 90 air ambulances and one leased helicopter, all dedicated to emergency transfers.

16. Hidalgo County EMS has approximately 250 highly-trained staff members ranging from EMT's, paramedics, licensed paramedics, flight paramedics, registered nurses, and support personnel.

17. On October 8, 2019 Hidalgo County EMS filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. No Trustee, examiner, or official committee of unsecured creditors have been appointed.

18. On March 11, 2020, the World Health Organization officially declared that COVID-19, the disease caused by SARS-CoV-2, had become a global pandemic.

19. Hidalgo EMS is currently working to reorganize in Chapter 11 while maintaining 100% of its usual staffing levels in the midst of the Corona Virus pandemic and a significant decline in revenue, a revenue decline that has occurred despite the Debtor's extensive and ongoing involvement as a "front line" health care provider for victims of COVID-19. It is critically important even in normal times to maintain the Debtor's fully-staffed emergency response capability, because that serves the entire South Texas region and all its citizens.

20. Debtor's business, along with nearly every other business in the United States, has become the economic victim of novel coronavirus SARS-CoV-2, which lead to the shutdown or severe curtailment of normal life in the United States.

21. Debtor's call volume has declined approximately 30% since the onset of this crisis, which will result in a significant decline in revenue, but it continues to maintain pre-Corona employment levels in order to serve the community.

22. In response to the economic catastrophe caused by the pandemic Congress passed the CARES Act, which was signed into law on March 27, 2020. The PPP is part of the CARES Act that extends the loan program under section 7(a), 15 U.S.C. § 636, of the Small Business Act to any business with less than 500 employees who apply for funds through any participating federally insured lending institution. See generally §§ 1101-1109 of the CARES Act.[1] The PPP

[1] https://www.congress.gov/bill/116th-congress/house-bill/748/text

allows a qualified business to receive loans equal to 2.5 times their average monthly payroll, up to $10 million. PPP loans may be fully forgiven if the money is used for payroll and related expenses (subject to certain caps), rent, utilities, and interest on debts incurred before February 15, 2020. Id. at § 1102. Loaned money used for other purposes would need to be repaid, but at a low, fixed interest rate, and payments would be deferred for up to a year. Section 1102(g). The PPP was initially funded with $350 billion, but due to overwhelming demand that amount was quickly expended, and legislation is pending to authorize funding of at least an additional $320 billion. Whether that amount will be expended as quickly is unknown. PPP Loans also explicitly waive certain requirements under section 7(a) of the Small Business Act, such as the exhausting other credit options first, prepayment penalties, and personal guarantee requirements.

23. There is no statutory provision in either the CARES Act or the Small Business Act that prohibits extending a PPP loan to a debtor and debtor in possession under chapter 11 of the Bankruptcy Code.

24. The SBA's own interim final rule says nothing about a bankruptcy exclusion on PPP loans.[2]

25. To receive a PPP Loan, a qualified business must apply with any federally insured participating lender, using an application form created by the SBA.

26. Hidalgo EMS needs the PPP loan to shore up its finances and allow it to continue to support the community as a front-line medical services provider during the crisis.

27. Without this source of liquidity the Debtor's survival as a going concern is in question.

---

[2] https://www.sba.gov/sites/default/files/2020-04/PPP--IFRN%20FINAL_0.pdf

28. Debtor applied for a PPP loan from its regular lender, Plains Capital Bank, but the application was rejected because of Debtor's bankruptcy.

29. Plaintiff applied for a PPP loan in the amount of $2,601,805.92 with Plains Capital Bank on April 3, 2020, believed to be the first day lenders started accepting applications. See completed loan application attached as **Exhibit A**.

30. If approved, Debtor would have used, and, if allowed to reapply for a PPP loan with the bankruptcy exclusion removed, will use the funds to pay its rent, utility, insurance, and full-time employees' payroll costs.

31. These are all permissible uses under either under section 1102 or 15 U.S.C. § 636(a) that allow use of loaned funds for "working capital."

32. Exhibit A is a loan application form promulgated by SBA, which SBA requires the federally insured participating lenders to use in connection with the PPP loan program.[3]

33. Even though section 1102 does not prohibit extending a PPP loan to a chapter 11 debtor in possession with less than 500 employees, the PPP application form asks if "the Applicant … [is] presently involved in any bankruptcy." See Question No. 1, Paycheck Protection Program Borrower Application Form, attached as Exhibit A.

34. The application form says "[i]f questions (1) or (2) below are answered "Yes," the loan will not be approved." Id. (underlining in original).

35. Notwithstanding the prohibition in the PPP application form, Hidalgo County EMS submitted a PPP application to Plains Capital Bank, and answered "yes" to Question No. 1.

36. Hidalgo County EMS meets all other requirements for receipt of a PPP loan.

[3] SBA subsequently revised its application form, however the improper bankruptcy question still appears on the revised form.

37. The only reason Hidalgo County EMS answered "yes" to Question #1 is the pending bankruptcy. Neither Hidalgo EMS or its owner are "presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency."

38. On April 9, 2020, Plains Capital Bank rejected the application because Debtor was "presently involved in any bankruptcy." See **Exhibit B**.

39. Thereafter Debtor sought help directly from SBA but its direct inquiries to the SBA have not been answered.

40. Debtor then sought assistance from its elected officials to intercede with SBA, but that resulted only in a relayed message from SBA that "treasury guidance" prevents the issuance of PPP loans to debtors in bankruptcy. No other explanation was provided and the specifies of the so-called "treasury guidance" were not explained.

41. Debtor was also informed that there is no appeals process at the moment but there might be in the future.

## V.
## COUNT ONE – EXCEEDING AUTHORITY

42. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1–41 above.

43. SBA exceed its authority to administer the PPP loan program by requiring applicants like Hidalgo County EMS, a qualifying business under the PPP, not be "presently involved in any bankruptcy," even though no such prohibition exists in the PPP, § 7(a) of the Small Business Act, or the SBA's own rule administering the PPP.

44. Hidalgo County EMS therefore seeks injunctive relief and a declaration and order that SBA must remove all references to a loan applicant's status as being involved in any

bankruptcy from its PPP loan applications, PPP loan policies and procedures, and PPP loan agreements.

45. Hidalgo County EMS also seeks injunctive relief and a declaration and order that SBA must instruct all lending institutions administering PPP loans that there is no exclusion from the PPP loan program on account of involvement in bankruptcy.

46. SBA can sue and be sued in a court of competent jurisdiction, including for declaratory relief and damages. *Mar v. Kleppe*, 520 F.2d 867, 869 (10th Cir. 1975). Courts have expressly found that the SBA Administrator can be enjoined when he or she acts beyond the scope of his [or her] authority. *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1057 (1st Cir. 1987) ("The no injunction language protects the agency from interference with its internal workings . . . but . . . should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations.").

## VI.
## COUNT TWO – DISCRIMINATION

47. Hidalgo County EMS repeats and incorporates by reference the allegations contained in paragraphs 1–46 above.

48. Plaintiff seeks injunctive relief and a declaration and order that the SBA's exclusion of eligibility for a PPP loan due to bankruptcy is unlawful discrimination under 11 U.S.C. §525(a).

49. The Bankruptcy Code states in relevant part:

> . . . a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, ***<u>or other similar grant to</u>***, condition such a grant to, discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title . . . solely because such bankrupt or debtor is or has been a debtor under this title . . .

11 U.S.C. §525(a) (emphasis added).

50. Federal courts have applied Section 525(a) to prohibit numerous discriminatory acts by governmental units against debtors. *See generally Annot.,* "Protection of Debtor from Acts of Discrimination by Governmental Units Under § 525 of the Bankruptcy Code of 1978," 68 A.L.R.Fed. 137-56 (1984). Courts have applied Section 525(a) to matters involving government contracts, student loan applications, public housing, insurance, public mortgage financing, utility service, building permits, employment termination, and agricultural subsidies. See generally *Rees v. Employment Security Commission of Wyoming (In re Rees)*, 61 B.R. 114, 120 (Bankr. D. Utah 1986)(collecting cases).

**VII.**
**COUNT THREE – ATTORNEYS FEES**

51. Plaintiff seeks an award of its costs and attorneys' fees against the United States generally or against the SBA specifically pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Murkeldove v. Astrue*, 635 F.3d 784 (5th Cir. 2011); *In re Transcon Lines*, 178 B.R. 228, 232 (Bankr. C.D. Cal. 1995) ("bankruptcy court has jurisdiction to award fees" under EAJA).

**VIII.**
**A TRO AND A PRELIMINARY INJUNCTION ARE WARRANTED**

52. Preliminary injunctive relief is proper where, as here, the movant shows (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

53. Neither the PPP nor section 7(a) of the Small Business Act prohibits lending money to a debtor under chapter 11 of the Bankruptcy Code. Congress created the PPP loan

program specifically to help struggling businesses like Hidalgo County EMS to survive.

54. This contrasts with other parts of the CARES Act—parts that are inapplicable to the PPP lending program—which explicitly prohibits lending to bankruptcy debtors. See CARES Act at § 4003(c)(3)(D)(i)(V) (requiring that any recipient of loan under Title IV not be "a debtor in a bankruptcy proceeding").[4] Nevertheless, Defendant promulgated an application form for PPP loans, which states that "the loan will not be approved" if the applicant is "presently involved in any bankruptcy." See PPP Borrower Application Form, attached as Exhibit A.

55. Tellingly, in section 1113 of the Act, Congress made amendments specifically relevant to the Bankruptcy Code. First, it temporarily increased the debt limit for a Subchapter V bankruptcy to $7,500,000.00 (up from $2.7 million). See CARES Act § 1113(1). Next, Congress chose when to make the CARES Act applicable to pending bankruptcy petitions. In section 1103(3) Congress specifically provided that the increased debt limit for Subchapter V bankruptcies only applied "to cases commenced . . . on or after the date of enactment of this Act."

56. Third, Congress rewrote the definition of "Current Monthly Income" in 11 U.S.C. § 101(10A)(B)(ii) to specifically provide that benefits under the CARES Act would not be counted as "current monthly income". The clear intent is that CARES Act benefits can be used by a debtor as part of the debtor's plan. Given that Congress specifically intended to give increased access to small businesses to reorganize under subchapter V, it would work directly against Congress' intent for SBA to preemptively disqualify businesses who are seeking to reorganize.

[4] Other sections in the CARES Act have restrictions regarding eligibility that are in contrast to the lack of restrictions in the PPP. To get a 6 month deferment on an existing SBA loan (Section 1112 of the Act), the loan has to be in "regular servicing status."

57. Congress specifically addressed existing bankruptcies when it chose to legislate with respect to them. Nevertheless, Defendant issued an application for a PPP loan, which states that "the loan will not be approved" if the applicant is "presently involved in any bankruptcy." See PPP Borrower Application Form, attached as Exhibit A.

58. Congress' intent is unambiguous. It decided when debtors already in a bankruptcy cannot obtain CARES Act benefits. See CARES Act at § 4003(c)(3)(D)(i)(V) (requiring that any recipient of loan under Title IV not be "a debtor in a bankruptcy proceeding"). It amended Subchapter V to provide that new subchapter V debtors would benefit from the increased debt limit of $7.5 million but that existing subchapter V debtors would not benefit from the increased debt limit. See CARES Act § 1113(1) and (3). Congress also was specific enough in its legislation that it specifically allowed chapter 13 debtors to calculate "disposable income" without including CARES Act benefits but did not provide the same relief to subchapter V debtors or chapter 11 debtors generally.

59. Debtor and its creditors are being directly harmed by the SBA's actions that have no basis in law and exceed its authority. Issuance of a temporary restraining order and a preliminary injunction pursuant to Bankruptcy Rule 7065 (incorporating Rule 65, FRCP) are warranted. To do so the Court must review and determine four elements:

**a. <u>First, whether the movant has a substantial likelihood of success on the merits.</u>**

60. Neither the CARES Act, the PPP, nor section 7(a) of the Small Business Act prohibits lending money under the PPP program to a debtor under chapter 11 of the Bankruptcy Code. SBA exceeded its authority by issuing and requiring participating lenders to use a loan application form that says it cannot make PPP loans to debtors. The SBA's own interim final

rule says nothing about a bankruptcy exclusion on PPP loans. Hidalgo County EMS otherwise meets all other requirements for receipt of a PPP loan. The only reason Hidalgo County EMS answered "yes" to Question #1 of the SBA loan application form is the pending bankruptcy. The bankruptcy exclusion engrafted by SBA onto the PPP loan program is blatant discrimination on account of being in bankruptcy, prohibited under 11 U.S.C. §525(a). Movant clearly satisfies this element.

**b. <u>Second, whether the movant will suffer irreparable injury if the preliminary injunction is not granted</u>.**

61. If this Court does not issue an injunction Debtor has clearly shown a likelihood of substantial harm and irreparable injury. Hidalgo County EMS is the primary 911 patient transfer provider for a large part of its service area in South Texas that includes some of the poorest areas in the country. It has approximately 250 highly-trained employees who may lose their jobs unless Debtor is permitted to apply for PPP loan. Hidalgo EMS is currently working to reorganize in Chapter 11 while maintaining 100% of its usual staffing levels in the midst of the Corona Virus pandemic and a significant decline in call volume which causes a revenue decline that has occurred despite the Debtor's extensive and ongoing involvement as a "front line" health care provider for victims of COVID-19 in South Texas. Debtor's business, along with nearly every other business in the United States, has become the economic victim of novel coronavirus SARS-CoV-2, which lead to the shutdown or severe curtailment of normal life in the United States. Debtor's call volume has declined approximately 30% since the onset of this crisis, and its revenues are likewise significantly impacted, but it continues to maintain pre-Corona employment levels in order to serve the community during this pandemic. Hidalgo EMS needs the PPP loan to shore up its finances and allow it to continue to support the community as a

front-line medical services provider during the crisis. Without this source of liquidity the Debtor's survival as a going concern is in question. If approved, Debtor will use the funds to pay its rent, utility, insurance, and full-time employees' payroll costs, all permissible uses under the CARES Act. Hidalgo County EMS meets all other requirements for receipt of a PPP loan. The PPP was initially funded with $350 billion, but due to overwhelming demand that amount was quickly expended, and legislation is pending to authorize funding of at least an additional $320 billion. Whether that amount will be expended as quickly is unknown. Debtor unsuccessfully sought help directly from SBA but its direct inquiries to the SBA have not been answered. Debtor's elected officials tried to help, but that resulted only in a relayed message from SBA that "treasury guidance" prevents the issuance of PPP loans to debtors in bankruptcy. No other explanation was provided and the specifies of the so-called "treasury guidance" were not explained. Debtor was also informed that there is no appeals process. Movant clearly satisfies this element.

c. **Third, whether that risk of harm outweighs the harm to the opposing party if a TRO and a preliminary injunction are granted.**

62. In this case the risk of harm to Movant is extreme and the risk of harm to SBA if the court issues an injunction as requested is nonexistent. Congress created the PPP loan program specifically to help businesses struggling with survival due to the COVID-19 pandemic survive. Debtor's survival is at risk. Movant clearly satisfies this element.

**d. Finally, whether the preliminary injunction is in the public interest.**

63. This element is satisfied because the continued gainful employment of the Debtor's approximately 250 employees benefits the public interest as a whole. The Debtor's business as a "front line" health care provider for victims of COVID-19 in South Texas is vitally

important even in normal times. It is vastly more important now as maintaining a fully-staffed emergency response capability serves the entire South Texas region and all its citizens. The public interest is clearly served by Debtor being able to maintain 100% of its usual staffing levels in the midst of the Corona Virus pandemic and an approximately 30% decline in its call volume since the onset of this crisis. Movant clearly satisfies this element.

**IX**
**NO BOND IS REQUIRED**

64. Due to the nature of this request, no bond is required for the enforcement of an injunction, and under these circumstances, no bond should be required for the temporary emergency relief sought by way of Rule 7065, BRP. *See, e.g. Mississippi Power & Light Co. v. United Gas Pipe Line Co*., 760 F.2d 618 (5th Cir 1985); 7, Moore's Federal Practice ¶ 65.04[1] at 65-38.

WHEREFORE, the Debtor requests that this Court issue a temporary restraining order, in substantially the form filed herewith, granting the relief requested in this Application, set a hearing for a preliminary injunction, and for such other and further relief as may be just and proper under the circumstances.

WHEREFORE, upon final trial the Plaintiff should be granted judgment as requested and for all other relief to which they are entitled.

Dated: April 22, 2020

Respectfully submitted,

*/s/ Nathaniel Peter Holzer*
Nathaniel Peter Holzer
State Bar. No 00793971
***Jordan, Holzer & Ortiz, PC***
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX 78401
Telephone: 361.884.5678

Facsimile: 361.888.5555
Email: pholzer@jhwclaw.com
**BANKRUPTCY CO-COUNSEL TO DEBTOR**

-and-

Kay B. Walker
State Bar No. 20713400
***Law Office of Kay B. Walker***
615 Leopard, Ste. 635
Corpus Christi, TX 78401
Telephone: 361.533.2476
Email: kaywalker@kaywalkerlaw.com
**BANKRUPTCY CO-COUNSEL TO DEBTOR**

**VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the facts stated in paragraphs 12-21, 26-30, and 35-41 of the foregoing Complaint are true and correct, and that the attached Exhibits A & B are true and correct copies of business records of the Debtor for which I am a custodian.

Executed on April 22, 2020.

___*/s/ Omar Romero*_______________________
Omar Romero, Chief Restructuring Officer,
Hidalgo County Emergency Service Foundation